IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ELIZABETH DEJESUS,<br><br>          Plaintiff,<br><br>               v.<br><br>CAROLYN W. COLVIN,<br>Commissioner, Social Security<br>Administration,<br><br>          Defendant. | Civil No. 14-4798 (RMB)<br><br>**OPINION** |

Appearances:

Adrienne Freya Jarvis
Kings Highway North, Suite 304
Cherry Hill, NJ 07006
     Attorney for Plaintiff

Erica Perkins
Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
P.O. Box 41777
Philadelphia, PA 19101
     Attorney for Defendant

**BUMB**, United States District Judge:

     Plaintiff, Elizabeth DeJesus, (the "Plaintiff") seeks

judicial review pursuant to 42 U.S.C. § 405(g) of the final

decision of the Commissioner of Social Security denying her

application for Social Security Disability Insurance benefits

("SSDI"). For the reasons set forth below, the Court will vacate

the decision of the Administrative Law Judge ("ALJ") and remand.

## I.   __Background__

a. Procedural History

Plaintiff applied for SSDI on March 17, 2011, alleging a disability onset date of October 1, 2009. (Administrative Record "R." 221-22, 245). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then filed a request for a hearing before an ALJ, which was held before Honorable Nicholas Cerulli on November 16, 2012. (R. 46-96, 161-66). Plaintiff appeared and testified at the hearing. (Id.).

On January 7, 2013, the ALJ issued his determination, finding that the Plaintiff has not been under a disability as defined by 20 C.F.R. § 404.1520(f) and is not disabled under section 216(i) and 223(d) of the Social Security Act. (R. 25-40). Plaintiff filed a Request for Review of Hearing Decision, which was denied by the Appeals Council on June 9, 2014. (R. 1-4). That decision became the final decision of the Commissioner of Social Security, and this appeal followed.


b. Hearing Testimony

At the hearing, Plaintiff was represented by counsel. (R. 49). Plaintiff is a 42-year-old female from Puerto Rico with a 9th grade high school education who does not speak English.[1] (R.

---

[1] Plaintiff was assisted by an interpreter during the hearing. (R. 48).

48, 55, 59). Plaintiff lives at home with her three children and grandchildren. Plaintiff stated that she gets her 9-year-old son ready for school and walks him to school each morning. (R. 56). Shortly thereafter, Plaintiff clarified that she drove her son to school every day. (R. 57). Plaintiff has not worked since October 2009 when the alleged disability onset occurred, but was previously employed as a house cleaner. (R. 59-60).

Plaintiff reported that she experiences pain all over her body that stops her from working. (R. 62). Additionally, Plaintiff stated that cleaning worsens her pain and that her pain medication provides little relief. (R. 63-64). Plaintiff further testified that her alleged disability limits her to being able to lift only 10 pounds and to walk for 15 minutes before needing to rest. (R. 70-71). Plaintiff averred that her physical mobility is further constrained by her disability insomuch as it precludes her from bending, squatting or kneeling. (R. 71). Plaintiff also reported that she often experiences painful numbness in her hands while using the phone and sleeping. (R. 77).

Plaintiff testified that she also battles depression, based on problems with her children and family. (R. 67). Plaintiff stated that suffers crying spells, which are another difficulty of her depression, when she goes to sleep and starts "thinking about everything." (Id.). Plaintiff stated that she has feelings

3

about harming herself all the time, but has never tried to do so other than when she was 17 and "swallowed a whole bottle of pills." (R. 68). Plaintiff further testified that she hears voices and sees things with some regularity. (Id.). Plaintiff was never hospitalized for depression, but was prescribed medication for treatment, which she indicated was helpful. (R. 70).

Plaintiff stated that her alleged disability makes it difficult to maintain concentration, remember doctors' appointments, and limits her ability to focus for more than five minutes at a time. (R. 72). Plaintiff purported that these difficulties also manifest in her social interactions, which cause her to only socialize with family and become particularly uncomfortable in a "crowd," which Plaintiff categorized as two people. (R. 72-73).  Plaintiff also asserted that she has difficulty with personal needs, such as showering and getting dressed. (R. 74). Household responsibilities such as cooking, laundry, and cleaning (mopping) are similarly limited and can only be performed "sometimes." (R. 75).

At the hearing, testimony was also taken from Plaintiff's daughter, Priscilla Gutierrez. (R. 81). Ms. Gutierrez testified that Plaintiff walks Ms. Gutierrez's little brother to school every day. (R. 83). Ms. Gutierrez also stated that Plaintiff has difficulty concentrating and only pays attention "half of the

time." (R. 84). With respect to Plaintiff's personal needs, Ms. Gutierrez similarly noted that Plaintiff has a difficult time with cooking and cleaning. (R. 87).

The final testimony taken was from vocational expert Mr. Gary Young. Mr. Young testified that a hypothetical individual with the same past work experience as the Plaintiff and who had a residual functional capacity to: perform light work with frequent pushing, pulling, and climbing stairs; occasional kneeling and reaching; perform unskilled work that involved repetitive tasks and occasional interaction with co-workers and members of the public, could perform the Plaintiff's past relevant work as a house cleaner. (R. 89). In addition, Mr. Young stated that there were other unskilled, light occupations in the national economy that the hypothetical individual could perform such as bench assembler, packer inspector, and inspector. (R. 89-90).

c) The ALJ's Decision

In applying the requisite five-step analysis,[2] the ALJ concluded that the Plaintiff met the insured status requirement of the Social Security Act and had not engaged in substantial gainful employment since October 1, 2009. (R. 27). The ALJ also found that the Plaintiff has the severe impairments of

---

[2] Described on pages 12-13 _infra_.

degenerative disc disease of the cervical and lumbar spines,
adjustment disorder, depressive disorder, and mood disorder.
(Id.). The ALJ noted that although these impairments are severe
under the Social Security Act, it did not mean that the
Plaintiff was entitled to disability benefits based on
consideration of the additional steps in the evaluation process.
(R. 28).

The ALJ found that the Plaintiff's impairments did not
satisfy the criteria for listed impairments in 20 C.F.R. Part
404, Subpart P, Appendix 1. (Id.). More specifically, he found
that the severity of the claimant's mental impairments,
considered singly and in combination, did not meet or medically
equal the criteria of listing 12.04. (R. 28). In making this
finding, the ALJ considered whether the "paragraph B" criteria
are satisfied, meaning that the mental impairments must result
in at least two of the following: "marked restriction of
activities of daily living; marked difficulties in maintaining
social functioning; marked difficulties in maintaining
concentration, persistence or pace; or repeated episodes of
decompensation, each of extended duration. A marked limitation
means more moderate but less than extreme." (R. 28-29).

The ALJ determined that in the activities of daily living,
the Plaintiff has a "mild restriction," (R. 29), noting that
Plaintiff is able to take her son to and from school, do some

6

household shores and shop.  The ALJ also found that Plaintiff has moderate difficulties with regard to social functioning and with regard to concentration, persistence or pace. (Id.).  The ALJ further found that there was no evidence establishing the "paragraph C" criteria, meaning that Plaintiff has not shown a medically documented history of chronic organic mental disorder or affective disorder of at least 2 years' duration.  (Id.)

Based on both his findings and considering the extent to which Plaintiff's symptoms "can reasonably be accepted as consistent with the objective medical evidence," (R. 30), the ALJ determined the Plaintiff had a residual functional capacity to perform a full range of light work with the following restrictions:

- Frequent pushing and pulling with the upper extremities;
- Frequent climbing of ramps and stairs;
- Frequent balancing, kneeling, crouching, crawling reaching, handling, and fingering;
- Must avoid unprotected heights and moving machinery; and
- Limited to unskilled work involving routine and repetitive tasks with occasional interaction with coworkers, supervisor, and the public.

(Id.). In determining the residual functional capacity, the ALJ concluded that, while the Plaintiff does have limitations, they are not as severe as she contends. (R. 32).  The ALJ cited Plaintiff's Function Report wherein she reported being able to cook two to three days a week for two hours, and being able to

do light dusting, cooking and watering the garden. (R. 30).  The
ALJ also referred to Plaintiff's testimony wherein she stated
that she stopped working due to pain and dizziness and due to
pain in her entire body.  (R. 31).  Plaintiff also testified
that she could walk for fifteen minutes and had difficulty with
concentration.  (Id.).  He noted that Plaintiff testified that
she walks her son to and from school, but later changed this
testimony to indicate she drives him to school.  (Id.).

In addition to considering Plaintiff's testimony, the ALJ
cited the following medical opinions and reports as support for
his RFC finding:

- Plaintiff's x-rays from January 2010 of the cervical
  spine, which were normal, and x-rays of her knees which
  only showed minimal degenerative changes. (R. 31 citing
  Exhibit 2F);
- An MRI of the lumbar spine from November 22, 2010 showing
  minimal posterior annular bulging with no disc herniation
  (Id. citing Exhibit 10F);
- Evidence that Plaintiff sustained neck and back injuries
  due to a motor vehicle accident in 2006, well before the
  alleged disability onset date of October 1, 2009. (Id.);
- Dr. Acosta's report from October 27, 2009, citing
  Plaintiff as having her disability for one month, which is
  insufficient for a finding of disability under the Social
  Security Act, requiring an impairment to be disabling for
  at least twelve consecutive months. (R. 32 citing Exhibit
  1F);
- Dr. Patel's treatment records that supplied diagnoses of
  low back pain, migraines, vertigo and fibromyalgia.  Patel
  commented that Plaintiff's compliance with medicines and
  follow-up was questionable.  (R. 32-33 citing Exhibits 2F
  and 20F);
- Emergency room records from 2010 for complaints of pain
  all over the body, even though the record noted Plaintiff

could ambulate without assistance and that her pain was intermittent. (Id. citing Exhibit 9F);

- Dr. Mirsen's examination report from June 2, 2011, which cited Plaintiff as depressed and tearful, but that her neurologic exam remained intact. (R. 33 citing Exhibit 10F);
- Dr. Bagner's September 2011 report stating that Plaintiff had normal flexion and extension in the cervical spine and no motor or sensory abnormalities in the upper extremities. (R. 33 citing Exhibit 3F);
- State Agency medical consultant Dr. Britman's October 2011 report citing Plaintiff's RFC as enabling her to perform the full range of light work. (R. 34 citing Exhibit 2A);
- State Agency medical consultant Dr. Acuna's December 2011 report, citing additional limitations for the Plaintiff, to the extent it was consistent with RFC finding. (R. 34 citing Exhibit 4A);
- Records from Nueva Vida Behavioral Health Center from 2009 through 2012 documenting ongoing therapy and an initial diagnoses of adjustment disorder and depressive disorder not otherwise specified ("NOS").  Plaintiff was also assigned a Global Assessment Functioning ("GAF") score of 30-40.  (R. 43 citing Exhibit 21F).
- Dr. Miller's September 2011 consultative psychological examination report citing Plaintiff as not having a thought disorder and having a generally neutral mood.  The report also noted that Plaintiff was driven to the appointment by her boyfriend.  Plaintiff noted chronic pain, depression and that she sometimes has tactile hallucinations. Dr. Miller assigned a GAF score of 40. (R. 35 citing Exhibit 6F);
- State Agency psychological consultant Dr. Conneran's report citing Plaintiff as having no limitations on concentration, persistence, or social interaction. (R. 36 citing Exhibit 2A).  This finding was affirmed by another State Agency psychological consultant on December 2, 2011. (Id. citing Exhibit 4A).

In the ALJ's evaluation of the medical evidence above, he noted that the Plaintiff's GAF scores, "prior to the alleged disability onset date are clearly unrealistic and contrary to claimant being able to maintain substantial gainful activity at

that time." (R. 34).  The ALJ also noted that, per the report of Dr. Miller, "there were no indications of a thought disorder in the quality or content of [Plaintiff's] responses." (R. 35). The ALJ further noted that he gave little weight to Dr. Miller's GAF score and it was "at odds with the doctor's own examination findings and not supported by the totality of the record, especially the findings and opinion of the State Agency psychological consultants." (R. 36).  He noted that the functional effects of the Plaintiff's pain, although described by Plaintiff as a "ten" on a scale of "one to ten," was undermined by Dr. Acosta's comments (Exhibit 1F), which indicated that the Plaintiff appeared to be in only "mild distress." (R. 37). The functional effects of the Plaintiff's pain were further called into question by Dr. Mirsen's comments (Exhibit 2F), indicating that the Plaintiff was in no distress and that her mental status was intact. (R. 37).

With regards to the Plaintiff's mental residual functional capacity, the ALJ concluded that the report issued by Nueva Vida Behavioral Health Center's Dr. Monte lacked objective clinical findings that supported its assessment. (R. 39). Moreover, the ALJ noted that the State Agency psychological consultants' opinions did not support Dr. Monte's assessment, (Exhibit 22F), of the Plaintiff having marked and extreme mental limitations. (Id.)

10

As an additional part of the RFC assessment, the ALJ found that the Plaintiff's testimony about her medically determinable impairments were inconsistent, which called into question the credibility of her testimony. (R. 37). More specifically, the ALJ cited a discrepancy between the Plaintiff's testimony and the completed "Function Report – Adult" (Exhibit 5E) in which she stated she could pay attention for twenty to twenty-five minutes. (Id.). The ALJ also noted how the Plaintiff testified to having "suicidal ideations" all of the time, but was cited as being non-suicidal in progress notes from the Nueva Vida Behavioral Health Center. (R. 37 citing Exhibits 6F & 21F).

The ALJ gave little weight to the other opinion evidence of Ms. Priscilla Gutierrez, daughter of the Plaintiff. (R. 39). The ALJ concluded that the same medical evidence that was assessed to determine the Plaintiff's RFC and credibility did not support the testimony of either person. (Id.).

After considering testimony from vocational expert, Mr. Gary A. Young, the ALJ concluded that the Plaintiff was capable of performing past relevant work as a housekeeper/cleaner. (R. 40). Mr. Young testified that the Plaintiff could also return to her past relevant work as a van driver and a cafeteria attendant. (Id.). Based upon Mr. Young's testimony, the ALJ stated the Plaintiff's past relevant work was performed at a level that is consistent with substantial gainful activity and that the

Plaintiff's past work, classified as unskilled, light work, did not require her to perform activities precluded by her residual functional capacity. (Id.).

Based on his findings, the ALJ ultimately concluded that the Plaintiff has not been under a disability as defined by the Social Security Act (20 C.F.R. § 404.1520(f)) and that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act.

## II. **Standard of Review**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r, 165 F. App'x 212, 215 (3d Cir. 2006) (citing

_Daring v. Heckler_, 727 F.2d 64, 70 (3d Cir. 1984); _Monsour Med. Ctr. v. Heckler_, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." _Ogden v. Bowen_, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing _Brewster v. Heckler_, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

_Gober v. Matthews_, 574 F.2d 772, 776 (3d Cir. 1978) (quoting _Arnold v. Sec'y of Health, Ed. & Welfare_, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted); _see also Guerrero v. Comm'r_, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The [administrative law judge's] responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), _aff'd_, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," _Hur v. Barnhart_, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," _Burnett v. Comm'r_, 220 F.3d 112,

122 (3d Cir. 2000). <u>See</u> <u>also</u> <u>Fargnoli</u>, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. <u>See</u> <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. <u>Sykes</u>, 228 F.3d at 262 (citing <u>Schaudeck v. Comm'r</u>, 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment

> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether
> the claimant is currently engaging in substantial
> gainful activity. 20 C.F.R. § 1520(a). If a claimant
> is found to be engaged in substantial activity, the
> disability claim will be denied. Bowen v. Yuckert, 482
> U.S. 137, 140 (1987).
> In step two, the Commissioner must determine whether
> the claimant is suffering from a severe impairment. 20
> C.F.R. § 404.1520(c). If the claimant fails to show
> that [his] impairments are "severe," [he] is
> ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical
> evidence of the claimant's impairment to a list of
> impairments presumed severe enough to preclude any
> gainful work. 20 C.F.R. § 404.1520(d). If a claimant
> does not suffer from a listed impairment or its
> equivalent, the analysis proceeds to steps four and
> five.
>
> Step four requires the ALJ to consider whether the
> claimant retains the residual functional capacity to
> perform [his] past relevant work. 20 C.F.R.
> § 404.1520(d). The claimant bears the burden of
> demonstrating an inability to return to [his] past

relevant work. <u>Adorno v. Shalala</u>, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. <u>See</u> 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. <u>See</u> <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984).

## III. **Analysis**

Plaintiff is seeking a reversal and remand of the decision to deny Plaintiff's claim for Social Security disability benefits, arguing that the ALJ erred in his assessment of Plaintiff's physical residual functional capacity, his evaluation of Plaintiff's mental residual capacity, and his credibility finding as to Plaintiff's testimony.  Each of these arguments is addressed below.

a) <u>ALJ's Determination of Physical Residual Functional Capacity</u>

   i.   <u>Evaluation of Dr. Acuna's medical report</u>

Plaintiff avers that the ALJ failed to adequately explain his rejection of the portion of State Agency Consultant, Dr. Acuna's opinion, which specifically suggested additional limitations for the Plaintiff – <u>i.e.</u>, restricting her to "sedentary" work and limiting her to four hours of standing or walking in an eight-hour workday. (R. 151, Pl.'s Br. 2, 8). Instead, in his RFC determination, the ALJ found that Plaintiff could perform a full range of light work. (R. 30). In addition, Plaintiff contends that the ALJ, by only adopting Dr. Acuna's opinion to the extent that it comported with his RFC formulation, gave the "antithesis" of the specific explanation required of the ALJ when evaluating medical evidence. (Pl.'s Reply Br. 3). More specifically, the ALJ's opinion stated:

> The undersigned gives great weight to these opinions to the extent they are consistent with the residual functional capacity finding above and with the additional limitations noted in the residual functional capacity finding. These opinion [sic] are well-supported and are "not inconsistent" with the other substantial evidence in the case record as discussed herein.

(R. 34).

The Defendant contends that giving "great weight" to a medical opinion does not necessarily mean its findings are adopted in their entirety. (Def.'s Br. 14). Dr. Acuna prescribed

17

Plaintiff additional limitations, which restricted her to "sedentary" work, and to standing or walking for only four hours in an eight-hour workday. (R. 141, 148-49). Although the ALJ did not incorporate these additional limitations into his RFC determination, the Defendant contends that assigning "great weight" to Dr. Acuna's opinion to the extent it is "consistent with the RFC finding" (R. 34), is a sufficient explanation of the ALJ's Conclusion. (Comm'r Br. 14).

Social Security Ruling ("SSR") 96-5p requires that "opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability . . . ." Moreover, when there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason . . . . The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(internal citations omitted). This analysis is required so that the court is able to determine whether the ALJ's opinion is sufficiently supported by substantial evidence. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

This Court agrees that the ALJ has failed to adequately explain his rejection of the portion of Dr. Acuna's opinion that

limits the Plaintiff to "sedentary" work. In his decision, the ALJ declines to give reasons for rejecting Dr. Acuna's additional restriction that limits Plaintiff to "sedentary" work, but instead gives a cursory explanation, stating that Dr. Acuna's opinion is given weight to the "extent [it is] consistent with the residual functional capacity finding above." (R. 34). Adopting only portions of an opinion that support the ALJ's RFC findings while failing to address those portions that contradict them – such as Dr. Acuna's "sedentary" work restriction – will not suffice as an adequate explanation. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) (holding that the ALJ is not entitled only adopt portions of an opinion that are favorable to finding nondisability); see also, e.g., Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004) (finding that an ALJ may not ignore evidence that does not support his conclusion); Smith v. Schweiker, 671 F.2d 789, 793 (3d Cir. 1982) (concluding that the ALJ may not ignore conflicting evidence). Moreover, Third Circuit case law mandates that an ALJ's RFC assessment must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Fargnoli v. Halter, 247 F.3d 34, 41 (3d Cir. 2001)(quoting Cotter, 642 F.2d at 704).

Here, the ALJ affording weight to Dr. Acuna's opinion to the extent it is consistent with the RFC findings fails to

provide the requisite explanation required. (R. 35).  As such, this Court cannot find that the ALJ's finding is supported by substantial evidence and, accordingly, this Court will remand for resolution of this conflicting probative evidence. See Fargnoli, 247 F.3d at 42 ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate and remand a case where such an explanation is not provided.").  While the ALJ may very well reach the same result on remand, a more thorough explanation of the conflicting evidence is required.

ii. Evaluation of Fibromyalgia Diagnosis

This Court similarly finds that the ALJ erred by failing to adequately provide an explanation with respect to his fibromyalgia findings under SSR 12-2p, which establishes the criteria that a claimant must meet in order to qualify as having fibromyalgia.  In his opinion, the ALJ simply stated:

> Although claimant has alleged having fibromyalgia . . . there is minimal clinical evidence in the record to corroborate or support any finding of significant vocational impact . . . resulting in more than minimal functional limitations for a period of twelve consecutive months.  Medical record [sic] in evidence establishing a medically determinable impairment consistent with Social Security Ruling 12-2p, which pertains to "Evaluation of Fibromyalgia."

(R. 28).  There is no specific discussion of what aspects of SSR 12-2p were not met, and Plaintiff is correct the record supports that "[a]ll trigger points for fibromyalgia are positive." (R. 403).

In response, the Defendant contends that the "diagnosis of fibromyalgia and generalized notation of positive trigger points was not enough to meet the requirements [to establish fibromyalgia], requiring specificity as to the number and location of the trigger points." (Def.'s Br. at 10, footnote 2). Although this explanation appears in the Commissioner's brief, this language was absent from the ALJ's decision. (R. 28). The Defendant is, however, unable to rely upon medical evidence that is not expressly considered in the ALJ's opinion. See Pearson v. Barnhart, 380 F. Supp. 2d 496, 506 (D.N.J. 2005) (stating that the court will not make factual determinations on behalf of an ALJ where the ALJ fails to cite specific medical facts). Therefore, a remand is appropriate for lack of substantial evidence.  On remand, while the ALJ may again reach the same determination with respect to Plaintiff's alleged fibromyalgia, but he must provide a more thorough explanation.


b) ALJ's Mental Residual Functional Capacity Determination

In addition to contesting the physical RFC, Plaintiff contends that the ALJ similarly erred in making his mental RFC

determinations – i.e., that Plaintiff was limited to unskilled work involving routine and repetitive tasks with occasional interaction with coworkers, supervisors, and the public.  More specifically, Plaintiff faults the ALJ for giving "little weight" to the assessment of Dr. Monte, which found Plaintiff was extremely limited in her ability to understand and remember complex instructions, make judgments or interact appropriately with supervisors, and markedly limited in her ability to carry out simple or complex instructions, and interact appropriately with co-workers or the general public.  Plaintiff takes issue with the ALJ's determination that there was a lack of objective findings to support Dr. Monte's assessment.

Moreover, Plaintiff asserts that the ALJ improperly concluded that Dr. Monte's findings were not supported by the findings of Dr. Miller. She further contends that that Dr. Miller's finding that Plaintiff had a GAF score of 40 is consistent with the significant limitations opined by Dr. Monte.[3] Moreover, Plaintiff notes that Dr. Miller's own findings that Plaintiff experienced, stiff gait, lethargy, inability to recall the president's predecessor, concentration, memory problems,

---

[3] A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in areas such as school, work, family relations, judgment, or thinking. (R. 34).

mumbled speech and related limitations on her daily activities support the GAF score. (R. 425).

In response, the Defendant argues that Dr. Monte's unduly restrictive opinion, which is based on a check-mark form alone, is inconsistent with the other records from Nueva Vida, which indicate routine therapy sessions and note that Plaintiff was alert, oriented, and cooperative with intact thought process, attention, concentration, short and long term memory. In addition, the findings of Dr. Miller and state agency psychological assessments support the ALJ's finding – i.e., despite finding a GAF score of 40, Dr. Miller found that there were "no indications of a thought disorder" and that Plaintiff appeared cooperative alert and coherent. (R. 435). Dr. Miller also noted that Plaintiff knew the current president, could count backwards from 20 and could count by serial 3's. (Id.)

This Court is mindful that GAF scores constitute "medical evidence accepted and relied upon by a medical source" that must be taken into consideration in an ALJ's decision. Woodsbey v. Colvin, No. 14-285, 2015 U.S. Dist. LEXIS 87933, at *25 (W.D. Pa. July 7, 2015). That said, a GAF score alone does not establish disability. Rios v. Comm'r of Soc. Sec., 444 F. App'x 532, (3d Cir. 2011). As stated by the Third Circuit, GAF scores are "medical evidence that informs the Commissioner's judgment of whether an individual is disabled." Id. Here, the ALJ

explicitly took the GAF scores into consideration but noted that they were not supported by the medical evidence of record.  See Ross, 2015 U.S. Dist. LEXIS 98840, *18 (finding that where a GAF score was not tied to any specific limitation relevant to the plaintiff's residual functional capacity, it is of limited evidentiary value).  While Dr. Monte found several extreme limitations, the form supporting her findings and GAF score was a simple check box form.  As stated in Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993), "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."  In addition, the ALJ's mental RFC findings were supported by substantial evidence: he discussed, at length, the evidence of record that he relied on in both discounting the GAF scores and making his ultimate mental RFC determination.  (See R. 35-36 noting Dr. Miller's contrary indications, the State Agency consultant's findings and the records from Nueva Vida Behavioral Health that noted Plaintiff was calm, communicative, and had an appropriate affect).  The ALJ's opinion thus reveals that he "was not 'cherry-picking' or ignoring medical assessments that ran counter to [his] finding." Rios, 444 F. App'x at 535. Instead, the ALJ thoroughly discussed the records at issue.  As such, this Court will not remand with respect to the ALJ's mental RFC determination.

c) <u>ALJ's Determination of Plaintiff's Credibility</u>

Finally, Plaintiff contends that the ALJ erred in his credibility determination with respect to Plaintiff's subjective testimony – namely his finding that "the record contains several inconsistencies which adversely affects the claimant's credibility." (R. 37).  Plaintiff argues that the ALJ unreasonably focused on purported inconsistencies in Plaintiff's testimony with respect to taking her son to school, Plaintiff's thoughts about self-harm, hallucinations (<u>i.e.</u>, hearing voices), and her daily activities.  Furthermore, where such inconsistencies existed, Plaintiff contends that the ALJ should have sought clarification.

In response, the Defendant argues that substantial evidence supports the ALJ's credibility findings.  More specifically, Plaintiff's inconsistent statements with respect to whether or not she walked or drove her son to school every day were clarified by the statements of her daughter, making clear she did walk the child to school.  The Defendant also pointed to Plaintiff's denial of hallucinations at her consultative examination with Nueva Vida.

While the ALJ is permitted to find portions of Plaintiff's testimony not credible, he is required to provide reasons for rejecting portions of her testimony which conflict with his findings. <u>See</u> <u>Burnett v. Comm'r</u>, 220 F.3d at 122 (stating "[an

25

ALJ] must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections"). In addition, it is insufficient for an ALJ to make a conclusory statement regarding a Plaintiff's credibility. See SSR 96-7P ("It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). Instead, the ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record[.]" 20 C.F.R. § 404.1545(a)(1).

"Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason v. Shalala, 994 F.2d 1067-68 (3d Cir. 1993) (citations omitted). However, as the fact finder, the ALJ can "reject partially, or even entirely, such subjective complains if they are not fully credible." Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001)(citation omitted). Nonetheless, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." Fargnoli, 247 F.3d at 43.

There is substantial evidence supporting parts of the ALJ's credibility determination - namely, with respect to Plaintiff's

26

alleged claims of self-harm and Plaintiff's hallucinations, the record supports his findings. (R. 720 & 597).  There is also substantial evidence to support the ALJ's determination with respect to Plaintiff taking her son to school, for example the testimony of Plaintiff's adult daughter (R. 83).

The Court agrees, however, that the ALJ erred by not discussing relevant portions of Plaintiff's hearing testimony that undermine his finding that, with respect to daily activities, Plaintiff has a "fairly active lifestyle" (R. 38). For example, the ALJ relied primarily on Plaintiff's Adult Function Report for his finding that Plaintiff could cook two to three days a week for two hours and engage in light cleaning. R. 30).  The opinion fails to discuss portions of Plaintiff's testimony that support her complaints of pain, which will be relevant on remand with respect to Plaintiff's alleged fibromyalgia.  For example, he did not discuss the fact that attempts to clean her house cause Plaintiff pain as does exposure to heat and cold, and that, when she cooks, Plaintiff needs to sit down and take breaks. (R. 63 & 75).  Moreover, it is unclear from the ALJ's opinion the extent to which he considered such testimony with respect to Plaintiff's activities of daily living and how her pain impacts her.  As such, remand is appropriate on this ground.  "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the

evidence that he rejects and his reason(s) for discounting that evidence." <u>Fargnoli</u>, 247 F.3d at 43. It is the responsibility of the ALJ to weigh the evidence and make determinations on contradicting evidence. <u>Rodriguez-Pagan v. Comm'r Soc. Sec.</u>, No. 10-4273, 2011 U.S. Dist. LEXIS 105425, at *45-46 (D.N.J. Sept. 16, 2011).  Again, while the ALJ might reach the same result on remand, a more thorough explanation dealing with conflicting evidence is needed.

## IV. Conclusion

For the reasons stated above, this Court will vacate the decision of the ALJ and remand. An accompanying Order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated:    <u>August 17, 2015</u>